IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



ABDI RAZAQ ABSHIR OSMAN.,

        Petitioner,

v.                                                                                 Criminal No. 2:10-cr-57-5

UNITED STATES OF AMERICA,

        Respondent.

## *MEMORANDUM OPINION & ORDER*

Before the Court is Abdi Razaq Abshir Osman's ("Petitioner") motion through counsel requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 559. The Government opposed the motion and Petitioner did not reply. ECF No. 597. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On August 8, 2012, Petitioner and his co-defendants were named in ten-count Second Superseding Indictment charging Petitioner with multiple crimes. ECF No. 140. On February 27, 2013, Petitioner was convicted by jury of the following:

- Count 1: Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203(a);
- Count 2: Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c);
- Count 3: Conspiracy to Perform Act of Violence Against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(9);
- Count 4: Conspiracy Involving a Firearm and a Crime of Violence, in violation of § 924(o);
- Count 5: Piracy under the Law of Nations, in violation of 18 U.S.C. § 1651;
- Count 6: Attack to Plunder a Vessel, in violation of 18 U.S.C. § 1659;
- Count 7: Assault with a Dangerous Weapon on Federal Officers and Employees, in violation of 18 U.S.C. § 111(a)(1), (b);
- Count 8: Act of Violence against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(6);
- Counts 9 and 10: Use or Possession of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).

ECF No. 210. On January 24, 2020, Petitioner pled guilty to Count One of the Superseding Indictment. ECF Nos. 25, 26, 27. According to his Presentencing Report ("PSR"), between February to April 2010, Petitioner and his co-defendants conspired to board a merchant vessel to steal valuable contents. ECF No. 561 at ¶ 16. On April 10, 2010, Petitioner and his co-defendants mistook the United States Ship *Ashland* to be a merchant vessel. The men then steered their boat to chase the USS *Ashland* and, as they came alongside the USS *Ashland,* one or more of the men took up one or more firearms and began firing at the USS *Ashland* and the persons on board. *Id.* In his PSR, Petitioner reported that he suffers from headaches and kidney problems. *Id.* ¶¶ 45-46. Petitioner also reported that on April 10, 2010, he was injured when the skiff he was aboard, during the instant offense, caught afire, causing burns to his hands, leg and face. *Id.* Petitioner was assessed a total offense level of 32, a criminal history category I, and a recommended guideline provision of Life imprisonment, plus 60 months and a Life term consecutive. *Id.* at ¶¶ 62-64. On May 16, 2014, the Court imposed a total of 360 months imprisonment, followed by 5 years supervised release. ECF Nos. 268, 276.

On May 21, 2014, the Government filed an appeal with the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 291. On August 13, 2015, the Fourth Circuit reversed the Eighth Amendment Order, vacated the defendants' sentences, and remanded for resentencing. ECF Nos. 342, 343; *see also United States v. Said*, 680 F.3d 374 (4th Cir. 2012). On September 9, 2016, the U.S. Supreme Court denied Petitioner's Writ for Certiorari. ECF No. 348.

On November 7, 2016, Court re-sentenced Petitioner to Life imprisonment, followed by 120 months, consecutive. ECF Nos. 376, 384. Petitioner is currently incarcerated at McDowell FCI serving a Life sentence.

On February 17, 2021, Petitioner filed his *pro se* motion for compassionate release. ECF

No. 559. On April 8, 2021, Petitioner filed the motion through counsel. ECF No. 583. On April 22, 2021, the Government responded in opposition. ECF No. 597. Petitioner did not reply.

Petitioner alleges that his underlying health conditions place him at increased risk for serious illness should he contract COVID-19 and argues this warrants extraordinary and compelling reasons for his release. ECF Nos. 559, 583. Moreover, Petitioner alleges that his wife in Somalia died from COVID-19 and that his children no longer have a caretaker. Accordingly, Petitioner requests that the Court grant him compassionate release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y.

April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to

courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. On March 4, 2021, Petitioner filed a formal request with the Warden at McDowell FCI. ECF No. 597 at Exhibit 1. The Warden never responded to Petitioner's request. Petitioner then filed a motion before the Court. Thus, more than 30 days passed since Petitioner filed his request.

#### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v.*

*Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. Petitioner argues that his medical condition, notably his kidney stones and cysts, place him at increased risk of serious illness if he contracts COVID-19. ECF Nos. 583, 577. According to Petitioner's medical records, in December 2020, Petitioner was diagnosed with kidney stones and cysts and presented symptoms such as blood in his urine. *See* ECF No. 603 (Sealed). As a result, he received treatment for this condition, was sent to the emergency room in January 2021, and eventually was scheduled for surgery to remove the kidney stones. *Id.* Unlike other cases, the Court here does not need to speculate about the impact COVID-19 would have on Petitioner's health should he contract COVID-19 because Petitioner already did contract COVID-19. Notably, on November 25, 2020, Petitioner received a positive COVID-19 test result. *Id.* As a result, McDowell FCI followed protocol to isolate Petitioner in compliance with the CDC's guidelines. Critically, Petitioner did not report any COVID-19 symptoms such as fever, cough, fatigue, muscle or body aches, sore throat, lose of taste or smell, nausea or vomiting, or diarrhea. *Id.* According to the Centers for Disease Control and Prevention, individuals with kidney disease, but not kidney stones, *can be* more likely to get severely ill if they contract COVID-19.[1] Here, Petitioner does not have kidney disease and does not have other underlying conditions that place him at increase risk. Moreover, the CDC has found that the COVID-19 vaccine is "effective at preventing COVID-19

---

[1] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov*, (Updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

as seen in clinical trial settings."[2] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals. *Id.* Here, on April 6, 2021, Petitioner was offered the opportunity to protect himself from the dangers of COVID-19, however he refused which undercuts his argument for extraordinary and compelling reasons for release. *See United States v. Madison*, No. 2:17-cr-80, ECF No. 88 (E.D. Va. Mar. 19, 2021) (internal quotation marks omitted); *see also United States v. Siegel*, 2021 WL 962491, at *2 (D. Md. Mar. 15, 2021), *appeal docketed*, No. 21-6426 (4th Cir. Mar. 23, 2021) (concluding that compassionate release was "not warranted" where the defendant had "refused to accept vaccination, a more direct means of protecting herself from COVID-19 than full release from prison").

Petitioner also alleges that his family circumstances present extraordinary and compelling reasons that warrant his release. *See* ECF Nos. 577, 583 *see also*, U.S.S.G. § 1B1.13, cmt. n.1. Specifically, Petitioner argues that his wife died in Somalia because of COVID-19 and that his two minor children are "living with whomever from the tribe can feed them at the time." ECF Nos. 559, 583. Accordingly, Petitioner request that the Court grant him release so that he may return to Somalia to care for his children. Although the Court is sympathetic to Petitioner losing his wife, Petitioner has not provided any evidence that allow the Court to evaluate whether his family circumstances merit extraordinary and compelling reasons for compassionate release. Particularly, Petitioner did not provide any evidence showing that his children are not receiving proper care. Therefore, Petitioner has not provided evidence showing that his family circumstances warrant a finding of extraordinary and compelling reasons for compassionate release.

---

[2] *See* Centers for Disease Control and Prevention, "Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. Critically, Petitioner already contracted COVID-19 in November 2020, and he remains unvaccinated. As of July 12, 2021, the BOP has reported a total of 387 positive recovered cases (0 active) of COVID-19 for inmates and 46 recovered cases (3 current) for staff at FCI McDowell.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his Presentencing Report ("PSR"),on April 10, 2010, Petitioner and his co-defendants came alongside the United States Ship (USS) *Ashland,* a United States Navy vessel owned by the United States of America, and one or more of the men took up one or more firearms, specifically including an AK-47, and began firing at the USS *Ashland* and the persons on board. ECF No. 561 at ¶ 16. The purpose of firing at the USS *Ashland* was to cause the USS *Ashland,* which they believed to be a merchant vessel, to surrender to them, at which point they would board

---

[3] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov,* https://www.bop.gov/coronavirus/

the USS *Ashland*, seizing the ship, its crew, and its valuable contents. *Id.* Crew members on the vessel returned fire, shooting one of the defendants in the chest and striking the small skiff. Then, Petitioner and his codefendants abandoned the skiff and were rescued by the crew of the Navy vessel. *Id.* Prior to this offense, Petitioner did not have any criminal conduct on record. *Id.* at ¶¶ 35-40. In all, Petitioner was assessed a total offense level of 32, a criminal history category I. *Id.* at ¶¶ 62-63. To date Petitioner has served over ten years of a Life sentence.

While in prison, Petitioner has demonstrated some evidence of rehabilitation. To his credit, Petitioner has not received any disciplinary infractions and he has completed classes and is completing his GED. ECF No. 583.

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show showing extraordinary or compelling reasons for release because of COVID-19 or his family circumstances. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for compassionate release, ECF No. 559, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
July 26, 2021

UNITED STATES DISTRICT JUDGE

9