IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ABDI RAZAQ ABSHIR OSMAN,**

     **Petitioner,**

v.                     **Criminal No. 2:10-cr-57-5**

**UNITED STATES OF AMERICA,**

     **Respondent.**

*MEMORANDUM OPINION & ORDER*

Before the Court is Abdi Razaq Abshir Osman's ("Petitioner") motion through counsel requesting compassionate release pursuant to 18 U.S.C. § 3582(c). Pet'r's Mot. for Comp. Release ("Pet'r's Mot."), ECF No. 720-2. The Government opposed the motion and Petitioner did not reply. Gov't's Resp. in Opp. to Comp. Release Mot. ("Resp. Opp."), ECF No. 723. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **GRANTED.**

## I. FACTUAL AND PROCEDURAL HISTORY

On August 8, 2012, Petitioner and his co-defendants were named in ten-count Second Superseding Indictment. ECF No. 140. On February 27, 2013, Petitioner was convicted by jury of the following:

- Count 1: Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203(a);
- Count 2: Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c);
- Count 3: Conspiracy to Perform Act of Violence Against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(9);
- Count 4: Conspiracy Involving a Firearm and a Crime of Violence, in violation of § 924(o);
- Count 5: Piracy under the Law of Nations, in violation of 18 U.S.C. § 1651;
- Count 6: Attack to Plunder a Vessel, in violation of 18 U.S.C. § 1659;
- Count 7: Assault with a Dangerous Weapon on Federal Officers and Employees, in violation of 18 U.S.C. § 111(a)(1), (b);
- Count 8: Act of Violence against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(6); and
- Count 10: Use or Possession of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).

1

ECF No. 210. According to his Presentencing Report ("PSR"), between February and April 2010, Petitioner and his co-defendants conspired to board a merchant vessel to steal valuable contents. PSR, ECF No. 792 at ¶ 16. On April 10, 2010, Petitioner and his co-defendants mistook the United States Ship (USS) *Ashland* to be a merchant vessel. The men then steered their boat to chase the USS *Ashland* and, as they came alongside the ship, one or more of the men began firing at the USS *Ashland* and the persons on board. *Id.* During the instant offense, Petitioner was injured when the skiff caught fire, causing burns to his hands, leg, and face. *Id.* ¶¶ 45-46. In his PSR, Petitioner reported that he suffers from headaches and kidney problems. *Id.* Petitioner was assessed a total offense level of 32, a criminal history category I, and a recommended guideline provision of Life imprisonment, plus 60 months and a Life term consecutive. *Id.* at ¶¶ 62-64. On May 16, 2014, the Court imposed a total of 360 months imprisonment, followed by 5 years supervised release. ECF Nos. 268, 276.

On May 21, 2014, the Government filed an appeal with the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 291. On August 13, 2015, the Fourth Circuit reversed the Eighth Amendment Order, vacated the defendants' sentences, and remanded for resentencing. *United States v. Said*, 798 F.3d 182 (4th Cir. 2015) (holding that the mandatory life sentence provided by legislature for any defendant convicted of piracy was not grossly disproportionate to defendants' offense). On September 9, 2016, the United States Supreme Court denied Petitioner's Writ for Certiorari. ECF No. 348.

On November 7, 2016, the Court re-sentenced Petitioner to Life imprisonment, followed by 120 months, consecutive. ECF Nos. 376, 384. Specifically, Petitioner's term of imprisonment consists of a term of Life on Count 5; two hundred forty (240) months on Counts 1, 2, 3, 4, 7, and 8; a term of one hundred twenty (120) months on Count 6, all to be served concurrently with Count 5; and a term of one hundred twenty (120) months on Count 10, to be served consecutively to Count 5. *Id.* Petitioner is currently incarcerated at Williamsburg FCI serving a total sentence of Life plus 120 months.

On February 17, 2021, Petitioner filed his *pro se* motion for compassionate release. ECF No. 559. On April 8, 2021, Petitioner filed a motion through counsel. ECF No. 583. On April 22, 2021, the Government responded in opposition. ECF No. 597. Petitioner did not reply. On July 27, 2021, the Court denied Petitioner's Motion for Compassionate Release. ECF No. 641. Petitioner appealed. ECF No. 643. On February 17, 2022, the Fourth Circuit remanded the case to address whether Petitioner's life sentence for piracy is unjust given the circumstances of the case. *United States v. Osman*, No. 21-7150, 2022 WL 485183 (4th Cir. Feb. 17, 2022).

On April 28, 2022, Petitioner filed a *pro se* Motion for Reconsideration and filed a Motion for Compassionate Release through counsel on January 10, 2023. ECF Nos. 683, 720. Petitioner argues that the nature and circumstances of his offense as well as other § 3553(a) factors provide extraordinary and compelling reasons that warrant his release. ECF No. 720-2. Accordingly, Petitioner requests that the Court grant him compassionate release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights

3

to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified because of the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act,

4

which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On March 4, 2021, Petitioner filed a formal request with the Warden at McDowell FCI, where he was incarcerated at the time. ECF No. 597 at Exhibit 1. The Warden never responded to Petitioner's request. Petitioner then filed a motion before the Court. Thus, more than 30 days passed since Petitioner filed his request.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to reduce his sentence. Petitioner argues that the Court should modify or vacate the sentences pertaining to Counts 9 and 10 because the counts are stacked. Pet'r's Mot. at 4-7. Petitioner further argues that

5

his personal history, the nature of the offense, and the remaining § 3553 factors present extraordinary and compelling reasons to reduce his sentence. Pet'r's Mot. at 9-12. The Government argues that the Court cannot reduce the mandatory minimum for Petitioner's conviction and the circumstances of the case do not provide an extraordinary and compelling reason for early release. Resp. Opp. at 7-21. Below, the Court takes each argument in turn.

### 1. The Court May Reduce a Sentence Below the Mandatory Term of Imprisonment

As a threshold matter, a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release. *See United States v. Halvon*, 26 F.4th 566 (2d Cir. 2022). Other circuits have implicitly reached the same conclusion. *See, e.g., United States v. Owens*, 996 F.3d 755 (6th Cir. 2021) (reversing the district court's order denying compassionate release and remanding to the district court where defendant was originally sentenced to the mandatory minimum); *see also United States v. Black*, 999 F.3d 1071 (7th Cir. 2021) (vacating and remanding in the same situation).

Courts in this district have reduced a sentence below the mandatory minimum through § 3582. *See United States v. Sims*, No. 3:98-CR-45, 2021 WL 1603959 (E.D. Va. Apr. 23, 2021); *United States v. Hambrock*, No. 4:20CR26, 2021 WL 775399 (E.D. Va. Feb. 19, 2021) (reducing the sentence from the mandatory minimum sentence of 60 months to one day served in pretrial detention). Moreover, courts in other districts have done the same. *See United States v. Reid*, No. 05-CR- 13 596(1), 2021 WL 837321, at *7–8 (E.D.N.Y. Mar. 5, 2021) (reducing defendant's sentence to 21 years when he would have been subject to five mandatory consecutive sentences amounting to 38 years under the current § 924(c) sentencing regime); *United States v. Millette*, No. 2:16-CR-00004-NT, 2020 WL 7502454 (D. Me. Dec. 21, 2020) (granting a modification of sentence despite a mandatory minimum sentence for a second offense of possession of child pornography).

The Government argues that if district courts have the authority to reduce a sentence below the

6

mandatory minimum, then "the compassionate release framework would swallow the whole of Eighth Amendment jurisprudence." Resp. Opp. at 14. There is no indication in the plain language of § 3582(c)(1)(A) that compassionate release is not available to people sentenced to mandatory terms. Instead, § 3582(c)(1)(A) broadly permits a district court to "reduce the term of imprisonment" once certain conditions are met. 18 U.S.C. § 3582(c)(1)(A). The broad language in § 3582(c)(1)(A) reflects Congress' intention behind the compassionate release mechanism, which was first introduced in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 (Oct. 12, 1984). Congress implemented this approach to keep "the sentencing power in the judiciary where it belongs," and permitted "later review of sentences in particularly compelling situations." *United States v. Sims*, No. 3:98-CR-45, 2021 WL 1603959 (E.D. Va. Apr. 23, 2021) (quoting S. Rep No. 98-225, 1983 WL 25404, at *121 (1983)). The Senate Judiciary Committee report on the Sentencing Reform Act explained that compassionate release would address "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances," and it did exclude mandatory minimums in this assessment or in the statute. *United States v. Halvon*, 26 F.4th 566 (2d Cir. 2022) (quoting S. Rep. No. 98-225, 1983 WL 25404, at *55 (1983)). Simply put, compassionate release applies to all offenses and all defendants. Accordingly, the Court has the authority to reduce a sentence below the mandatory minimum.

### 2. Section 924(c) Stacking

Petitioner argues that the Court should modify or vacate the stacked sentence pertaining to Counts 9 and 10 because of the extraordinary length of the sentence. Pet'r's Mot. at 4-7. However, Petitioner does not have a stacked sentence derived from the former mandatory "stacking" requirement under 18 U.S.C. § 924(c)(1)(C).

Before the First Step Act, the statute provided that, "[i]n the case of a *second or subsequent conviction under this subsection*, the person shall be sentenced to a term of imprisonment of not less

than 25 years." 18 U.S.C.A. § 924(c)(1)(C)(i) (2006) (emphasis added). The First Step Act amended § 924(c)(1)(C)(i), which now provides that, "[i]n the case of a *violation of this subsection that occurs after a prior conviction under this subsection has become final*, the person shall be sentenced to a term of imprisonment of not less than 25 years." *Id.* (2022) (emphasis added). Thus, under the original statute a defendant convicted under § 924(c) faced a consecutive 25-year mandatory minimum "even if the first § 924(c) conviction was obtained in the same case." *McCoy*, 981 F.3d at 275. Section 403 of the First Step Act "ended this practice, known as sentence 'stacking,' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." *Id.* (internal quotations omitted). Now, that mandatory minimum "is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1051 (2021).

Here, Petitioner does not have two § 924(c) convictions that stack. Petitioner was never charged with or sentenced for Count Nine of the Superseding Indictment. *See* ECF Nos. 140, 384. Petitioner was charged, found guilty of, and sentenced for Count 10, which charged him in violation of § 924(c)(1)(A)(iii). At the time of his sentencing and today, § 924(c)(1)(A)(iii) mandates, in relevant part, that "any person who, during and in relation to a crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C.A. § 924(c)(1)(A)(iii). In other words, in addition to any sentence Petitioner received for Count Five, the Court was, and still would be, required to impose a mandatory minimum of 10 years of imprisonment. Therefore, Petitioner's claim that the Court should modify the sentence on Counts 9 and 10 for his § 924(c) conviction holds no merit as Petitioner does not have two § 924(c) convictions that stack.

### 3. § 3553(a) Factors

Next, Petitioner argues that his personal history and the nature of the offense present extraordinary and compelling reasons to reduce his sentence. Pet'r's Mot. at 9-12. The Government argues the circumstances of the case does not provide an extraordinary and compelling reason for early release. Resp. Opp. at 7-21.

#### *i. Nature and Circumstances of the Offense*

Courts consider both the nature of the offense and the factors that led a person to commit an offense in imposing a sentence. *See e.g., Cotton v. United States*, No. 2:08-CR-87, 2022 WL 3050007, at *6 (E.D. Va. Aug. 2, 2022) (in granting a petitioner's motion for compassionate release, the court considered "greater context" surrounding the conviction, including that petitioner was a juvenile at the time, "had effectively only attained an eighth-grade level of education," had problems with substance abuse, and had an "untreated mental illness.").[1] Further, the Fourth Circuit specifically remanded this case for the Court to address whether a life sentence for piracy is unjust given the circumstances of this case. *United States v. Osman,* No. 21-7150, 2022 WL 485183 (4th Cir. Feb. 17, 2022).

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence given the nature and circumstances of his offense. Here, Petitioner was born in the small village of Budunbuto, which is located in the Nugaal region of Somalia. PSR ¶ 42. He has eight half-brothers and 14 half-sisters born to his father's three wives. *Id.* He led a nomadic life, primarily herding goats and camels, and fishing the waters of Somalia to provide for his extended family. *Id.* at ¶¶ 42, 50. On April 10, 2010, Petitioner and his co-defendants came alongside the USS *Ashland*, a United States Navy vessel owned by the United States of America. *Id.* at ¶ 16. One of Petitioner's co-defendants fired at the ship. *Id.* The purpose of firing at the USS *Ashland* was to cause the USS *Ashland*, which they believed to be a merchant vessel, to surrender to them. *Id.* Crew members

---

[1] Section 3553 mandates that courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

9

on the vessel returned fire, shooting one of the men in the chest and striking the small skiff. *Id.* at ¶ 17. No one on the USS *Ashland* was injured and nothing was seized. The only people injured in this case were the Petitioner and the other men on the small skiff. *Id.* ¶ 28. Petitioner and his co-defendants abandoned the skiff and were rescued by the crew of the Navy vessel. *Id.* ¶ 17. Petitioner and the other people on the small skiff attacked a heavily defended warship, not a vulnerable yacht or merchant vessel, were completely unsuccessful in that attempt, and inflicted no physical harm. Before this offense, Petitioner did not have any criminal conduct on record. *Id.* at ¶¶ 35-40. To date Petitioner has served over thirteen years of a Life plus 120 months sentence.

The Court also recognizes and gives due weight to the greater context that engendered Somali piracy. This phenomenon grew out of a collapsing nation and economy. At the time of Petitioner's offense, Somalia had been in a state of near-constant civil war since before 1991.[2] Empirical research identifies the economic causes of Somalian piracy as poverty, unemployment, and food price shocks– as well as access to busy anchorages, busy shipping lanes, and points where ships slow down.[3] However, Somalian piracy is largely an object of the past. According to the European Union Naval Force Somalia, only two vessels have been pirated since 2012.[4] In 2019, there was only one suspected pirate attack and there has not been a single pirate attack since 2019. *Id.* Counter-piracy efforts as well as political and economic development are generally recognized as the key factors responsible for reducing piracy.[5]

Accordingly, the circumstances that gave rise to Petitioner's offense have shifted dramatically

---

[2] *See*, Human Rights Watch, "Harsh War, Harsh Peace: Abuses by al-Shabaab, the Transitional Federal Government, and AMISOM in Somalia", No. 1- 56432- 621-7 (Apr. 2010) available at
https://www.hrw.org/report/2010/04/19/harsh-war-harsh-peace/abuses-al-shabaab-transitional-federal-government-and
; Human Rights Watch, "Shell-Shocked: Civilians Under Siege in Mogadishu", Vol. 19, No. 12(a) (Aug. 2007) available at https://www.hrw.org/report/2007/08/14/shell-shocked/civilians-under-siege-mogadishu
[3] *See generally*, Anja Shortland, "Can we Stop Talking About Somali Piracy Now? A Personal Review of Somali Piracy Studies", Peace Econ. Peace Sci. Pub. Pol. 2015; 21(4): 419-431 (2015), available at:
https://www.degruyter.com /document/ doi/ 10.1515/peps-2015- 0018/html. (last visited May 25, 2023).
[4] *See*, EU NAVFOR, "Key Facts and Figures", EUNAVFOR.eu, available at: https://eunavfor.eu/key-facts-and-figures (last visited May 24, 2023).
[5] Shortland, supra note 3.

and piracy in Somalia has all but ceased. Overall, the nature and circumstances of the offense weigh in favor of compassionate release. Not only did the Petitioner and his co-conspirators cause no physical harm during the commission of the underlying offense, but also the geo-political circumstances in Somalia that engendered piracy have shifted dramatically. Accordingly, the nature and circumstances of the offense weigh in favor of compassionate release.

### ii. § 3553(a) Factors Favor Compassionate Release

The Court now turns to whether the remaining 18 U.S.C. § 3553(a) factors support compassionate release. Petitioner argues that his lack of formal education, health issues, the need to support his extended family, the lack of criminal convictions other than the instant offense, and his rehabilitation while incarcerated provide reasons for release. Pet'r's Mot. at 9-12. The Government argues that these alone are ordinary reasons for release. Resp. Opp. at 21-22.

In his first Motion for Compassionate Release, Petitioner argued that his underlying health conditions made him more susceptible to COVID-19. The Court found that Petitioner did not have an underlying condition that put him at risk and he already recovered from COVID-19. ECF No. 641. Now, while Petitioner does not proffer COVID-19 as a reason to reduce his sentence, he does argue that his health has suffered since being incarcerated. Pet'r's Mot. at 11. Petitioner was moved from FCI McDowell in West Virginia to FCI Williamsburg in South Carolina to receive better treatment for his kidney and other related medical issues. *Id.* While Petitioner does not allege that his health issues are not adequately met by the BOP, the Court gives due weight to Petitioner's need for medical attention.

Notwithstanding his health issues, Petitioner has shown clear aspects of rehabilitation. Petitioner grew up in Somalia without any formal education. PSR at ¶ 49. He did not know how to speak English. Pet'r's Mot. at 11. While incarcerated, Petitioner started learning English, and maintained a cleaning job. *Id.* He has devoted his time in prison to self-improvement and acquiring

11

new skills. Throughout this time Petitioner has not incurred a single disciplinary infraction. *Id.* at 12. While rehabilitation alone does not provide sufficient grounds to warrant a sentence modification, the Court must give due weight to Petitioner's rehabilitation. 28 U.S.C. § 994(t); *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019) (reversing denial of sentencing reduction where district courts failed to "give[] any weight to the multitude of redemptive measures that [defendant] has taken since she was initially sentenced to life in prison"); *United States v. Hebert*, 574 F. Supp. 3d 416, 428 (E.D. Tex. 2021) (considering the defendant's significant rehabilitation, noting he "did not sit idly by to await the final moments of his life sentence" but instead "took [a] metaphorical leap of faith into the expansive ocean and grasped his float"); *United States v. Jones*, No. 4:06-cr-00278, 2021 WL 1156631, at *4 (S.D. Iowa Mar. 25, 2021) (noting the defendant's rehabilitation, which included a perfect disciplinary record and participation in "extensive programming [such as a] rigorous [drug abuse] program," was "nothing short of extraordinary" and a factor in favor of release).

Moreover, Petitioner illustrates that his family circumstances warrant a reduction in sentence. Courts in this district have held that a petitioner's desire to reunite with family for reasons other than those outlined in § 1B1.13 could constitute an extraordinary and compelling reason for release. *See United States v. Dourdoumis*, 2022 WL 1439664, at *7 (E.D. Va. May 6, 2022) (listing cases). While incarcerated, Petitioner's wife died of COVID-19. Pet'r's Mot. at 11. Now, his mother is 85-years old and in poor health. *Id.* Petitioner has four children and an aging mother that need his emotional and financial assistance. *Id.* When released, Petitioner plans to return to his family's village in Somalia to help support his ailing mother and children. *Id.* Courts in other districts have found that a petitioner filling the role of primary care giver to a parent or child constitute an extraordinary and compelling reason for release. *See United States v. Hansen*, 2020 WL 2219068, at *2 (N.D. Ill. May 7, 2020) (petitioner was and would reasonably be expected to be a primary caregiver); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (ruling that petitioner's role as the only potential caregiver for

his ailing mother is an "extraordinary and compelling reason" for compassionate release).

Further, Petitioner's release plan provides the Court with confidence that he is unlikely to recidivate and that the public will be protected because Petitioner plans to enter a vastly different situation than the one he faced when he committed this offense. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). Specifically, the conditions that lead to Somalia piracy have changed while Somalian piracy has all but disappeared. Moreover, upon release, Petitioner plans to raise and sell livestock, as well as fish to support the family that needs him. Pet'r's Mot. at 11.

Overall, the Court finds that the § 3553(a) factors strongly weigh in Petitioner's favor and his release would not undermine the respect for law or provide inadequate deterrence. Importantly, the dramatic shift in geo-politics, the fact that the underlying crime caused no physical harm to the occupants of the USS *Ashland*, nothing was seized from the ship, the Petitioner's evident rehabilitation, and Petitioner's release plan to provide for his family constitutes not only changed circumstances but also extraordinary and compelling reasons to grant a reduction in sentence. Therefore, Petitioner qualifies for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has shown extraordinary and compelling reasons to grant compassionate release. Thus, Petitioner's Motion for Reconsideration of Decision Denying Compassionate Release, ECF No. 683, is **GRANTED**. The Court reduces Petitioner's sentence to **TIME SERVED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
June / , 2023

Raymond A. Jackson
United States District Judge

13